IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROBERT DEAN NEALEIGH,

                Petitioner,

     v.

JEAN HILL,

                Respondent.

CV. 05-1318-KI

OPINION AND ORDER

TONIA L. MORO
Assistant Federal Public Defender
15 Newton Street
Meford, OR  97501

     Attorney for Petitioner

HARDY MYERS
Attorney General
LESTER R. HUNTSINGER
Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR  97301

     Attorneys for Respondent

KING, District Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. He challenges the validity of his Lincoln County convictions on the basis that the jury was tainted. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#18) is DENIED.

## BACKGROUND

In 2000, Petitioner was convicted on multiple counts for the assault of his longtime girlfriend, Ms. Roady. He was sentenced to 70 months imprisonment with 5 years post-prison supervision (PPS) under Measure 11 for Assault II ; to 28 months with 3 years PPS for Assault IV; and received a suspended sentence with 60 months formal probation for Menacing. (Respt.'s Ex. 106, 2-3.) Petitioner claims that "the jury that convicted him was tainted by its exposure to a plea and sentencing that took place in the same courtroom, before the same judge, immediately prior to the start of [his] trial." (Petr.'s Mem., docket #45, 1.) That proceeding also involved domestic violence, and a majority of the jury pool was present in the courtroom. (Respt.'s Ex. 103, Trial Tr., 20.)

In chambers, the trial judge informed counsel of the details of the preceding plea and sentencing proceeding. (Tr. 21-22.) Counsel described that proceeding as a typical domestic abuse case with the victim possibly protecting her abuser. (Tr. 22.) Counsel stated he did not think he could "unring the bell at this point in

terms of voir dire in selecting an impartial jury." (Tr. 22.)  He
felt the jurors were hopelessly contaminated, having witnessed a
proceeding of the same nature as Petitioner's, with discussion of
the felony charges and the victim's statement, and suggested that
the jury be discharged.  (Tr. 22-23.)  The court replied:

>        The record will show how hopelessly contaminated
> they are.  And I don't think there is anything that is
> hopeless.  They heard a domestic violence plea and
> sentence, a standard -- his minimization of his conduct
> and her forgiving the conduct and wanting to reunite.
>
>        I have no idea what this case involves, but that's
> a pattern of this domestic abuse that is totally typical.
> And I think most people that do any reading whatsoever
> will see that that is a common trait in domestic
> violence.  So I'm not going to discharge the jury.  I
> will certainly talk to them if you want the Court to.
>
>        This jury panel is here.  It's all we have for the
> month of July.  Their term ends tomorrow.
>
>        They had a hard time getting together -- and I think
> we have -- I was last told 28 jurors.  If I discharge
> this we have none until the month of July.  The next
> panel will be next week.  So -- I am not doing it for
> that reason.  I don't think the jury is hopelessly
> contaminated.  I think they just heard a plea and
> sentence on domestic violence.  And I don't see any
> problem whatsoever.  I wanted you to be aware of it.

(Tr. 23-24.)  The judge went on to say he would give a curative
explanation and "work with them for a few minutes on what they have
to forget."  (Id.)

        The first 24 prospective jurors were drawn from the jury pool.
Of these, four were immediately excused for cause based on their
work, or that of a significant other.  The judge then made the

following introductory statements to the prospective jurors:

We have a case involving an allegation -- three-count allegation of domestic violence.  A few of you sat in here.  And our courtroom is open and public.  And I don't have the right to kick you out.  On the other hand, had I caught the content of the kind of case that was coming through I would have probably had my bailiff just tell the jurors we'd just as soon you not come in so you don't sit through that.

I am going to be asking you and making sure that you -- you tell me that you're not going to take the case that we had and weigh it against the case that we're hearing here today, and judging this person because we had somebody who pled guilty to domestic violence.

* * *

In any event, the ringing of bells and unringing of bells is a real difficult thing.  I'm just going to make sure that each of you recognize that domestic violence occurs; that you will give us your promise to the best of your ability that you're not going to take what you heard this morning and start saying "Well, I think probably this is just another case of domestic violence."

The defendant, Mr. Nealeigh, is presumed innocent. As he sits before you – if I send you 12 back into the jury room, you must come out with a verdict of not guilty because there is no evidence in the case.  He's presumed innocent.

There is a charging instrument that says he -- he did something.  That's the way you get to court.  But you as jurors have to wipe the slate clean and say, "All right.   If the State proves their case beyond a reasonable doubt, then we will deliberate and arrive at a verdict -- we can arrive at a verdict of guilty.

But right at this point in time the presumption of innocence is the only item of evidence you have, and that is that he is innocent.

And I know it's difficult for us, particularly when you see some of the more notorious cases around the country, the Oklahoma bombing type of case, where you

say, you know, "We ought to do something to that kind of individual, and do it quickly."

Nonetheless, McVeigh and whoever else was involved have a right to a jury trial and to be proved guilty beyond a reasonable doubt if the State can do it.

And so the mere fact that a person comes in does not mean they have done anything. They're presumed to be innocent.

And do any of you have any problem with that?

Can you give me your assurances -- yes.

(Tr. 30-33.) At this point a juror spoke up.

Juror: I've been on both sides of the fence.

Court: All right. You've been a victim of domestic violence?

Juror: Yeah. And then they – yeah, I've been to jail for domestic violence. And then I had my husband put I jail for domestic violence.

Court: O.K. If that personal experience – and we will get into that a little bit more in a minute. But if that personal experience is going to be very traumatic on you and difficult for you to separate out, that this is a separate case or is going to cause you some severe emotional distress, I'll excuse you for cause.

That doesn't automatically excuse you, the mere fact that you've been a victim. So I guess it's a question of whether you feel comfortable sitting here.

Juror: It just kind of – you know, it's kind of hard to–

Court: Kind of hard to sit through it?

Juror: Yeah.

Court: Yeah. Do you feel it's going to be stressful on you and –

Juror: Pretty much.

5 - OPINION AND ORDER -

Court:  Yeah.  I'll excuse you for cause.

(Tr. 33-34.)  The court then addressed the group:

All right.  I've had – over the 30 years I've been
doing this, oftentimes we come into cases where people
have been victims of different types of offenses from sex
offenses to assaults to burglaries.  And some of them get
traumatically emotional and oftentimes it's very
stressful on them.  And the jury process is stressful
enough in itself, that you're asked to come in out of
your homes and places of work and make a decision on a
significant kind of case where a person is charged with
a crime. We know it's not a comfortable decision on your
part.  But if you have prior involvement oftentimes it is
stressful.

I want to make sure that you jurors disclose that
kind of thing.  If you've got something in your
background – we're not going to go into individual – this
woman just told us about – she's been a victim.  And that
oftentimes is something people don't want to talk about.
They don't want their neighbors to know that they had
been victims.  But if – if you have a similar type of
matter in your background, or your cousin or whatever was
subjected to it, we want to know that just so that you
get out that you're not totally unknowledgeable about
this kind of offense.

And I – I'll get to you in just a minute.

Let me look up here.

Is there anybody here that has a domestic violence
involved in their personal lives?

(Tr. 34-35.)  Four jurors raised their hands and the judge

questioned them further as to their ability to be impartial, to

separate out their experience from the case that would be before

them.  He again stressed the presumption of innocence.  (Tr. 36.)

One of the four was excused for cause.  (Tr. 39.)  Three more

jurors then spoke up.  After more questioning by the judge, and

another reference to the presumption of innocence (Tr. 41.), one juror was excused for cause after stating she didn't think she could be fair. (Tr. 40.)

The judge next asked about prior jury experience. Most had served on a jury, some within the existing term. (Tr. 43.) The judge outlined the difference between a civil trial and a criminal trial, stressing that in a criminal trial the burden of proof is "beyond a reasonable doubt."

> [T]he State willingly takes on that burden or they wouldn't be here. They don't come into court if they don't feel they can prove their case beyond a reasonable doubt.
>
> But with the presumption of innocence and the large burden that the State has, I want to make sure that you folks recognize that and deal with it.

(Tr. 45.)

Voir dire continued with defense counsel and the state asking questions. Another juror came forward stating she was uncertain she could be fair, having worked in a woman's shelter 20 years before. (Tr. 90-92.) She was excused for cause. (Tr. 92.) After peremptory challenges, two seats remained open and additional members of the jury pool were called. (Tr. 114.) The judge again stated the nature of the case and counseled the prospective jurors to keep in mind that the defendant was presumed to be innocent (Tr. 128); that "unless and until the State proves beyond a reasonable doubt, that presumption will remain." (Id.) He again stressed

that if the jury was sent to deliberate at that point they would be required to return a verdict of not-guilty because they only had the presumption of innocence on which to base a verdict. (Tr. 128-129.) Of the four new prospective jurors, one was excused for cause due to an ongoing case. (Tr. 131.) Questions by the judge about domestic violence prompted no further dismissals for cause. After peremptory challenges, one seat remained open.

The last juror of the pool was called in. She was an employee of the courts, worked with family abuse restraining orders on a daily basis, and had experienced her parents' domestic violence stemming from alcohol abuse. This last juror was carefully questioned by the court and both parties outside the presence of the other jurors. (Tr. 156, 171.) Counsel was somewhat concerned by this juror, yet he did not feel she should be excused for cause and he had used all his peremptory challenges. (Tr. 174.) The court offered another peremptory challenge. (Tr. 175.) However, after consultation with his client, counsel declined the offer and the jury was sworn in. (Id.)

The State's case consisted primarily of: the testimony of Ms. Roady; a tape of her 911 call; the testimony of police officers responding to Ms. Roady's 911 call; the testimony from two victim advocates who spoke with her and photographed her injuries shortly after her 911 call; the testimony of an acquaintance whose custom motorized bicycle Ms. Roady claimed caused some of her injuries;

Petitioner's prior conviction for assaulting Ms. Roady - to support the Assault IV charge.

As the State's first witness, Ms. Roady acknowledged calling 911 and telling both the police officers and the advocates that Petitioner assaulted her. (Respt.'s Ex. 104, Trial Tr. 232-239.) On cross-examination, Ms. Roady stated Petitioner did not assault her. (Tr. 241.) She explained her 911 call and reports of an assault stemmed from being on a 3-week drinking binge, and from arguing with Petitioner and being mad at him. (Tr. 247-249.) The State next introduced the tape of Ms. Roady's 911 call, (Tr. 265.) on which Ms. Roady identifies Petitioner as her assailant and reports he is "drunk . . . out of control . . . and beating the crap out of me." (Tr. 216-17.) She also states she does not need medical attention but has "some pretty bad bruises." (Tr. 218.) The police officers testified that Ms. Roady was crying and upset when they arrived on the scene and that she attributed her injuries to Petitioner assaulting her (Tr. 272-278; 301-306.). The victim advocates testified as to the injuries they observed and photographed, (Tr. 325-345; 359-366.), and the victim stating she would not testify against Petitioner if it meant his going to prison. (Tr. 342.) The acquaintance testified he always locks-up his customized bicycle and did not notice any signs that Ms. Roady had used his bike and fallen while he was in a convenience store. (Tr. 375-379.)

When called as a defense witness, Ms. Roady described her bicycle experience, explained that her injuries were the result of falling throughout a 3-week drinking binge, and again recanted that Petitioner had assaulted her. (Respt's Ex. 105, Trial Tr. 397-402.) She described lying to police and to the victim's advocates and stated that her statements in court were the truth. (Tr. 402-403.)

After both parties rested, the judge gave the jury instructions that "[t]he defendant is innocent unless and until the defendant is proved guilty beyond a reasonable doubt. The burden is upon the State to prove the guilt of the defendant beyond a reasonable doubt." (Tr. 470.) The court also instructed the jury:

> The defendant has stipulated to the fact that he was previously convicted in 1995 for assaulting the same victim in the present case. You may use this stipulation to satisfy the State's burden of proving the prior assault as required for Count 2. However, you may not use the fact to draw any inference that, because the defendant was convicted of a previous crime, the defendant may be guilty of the crime charged in this case.

(Tr. 474.)

The jury began deliberations and, after approximately 40 minutes, returned a unanimous verdict of guilty on all counts. (Tr. 479-482.) Counsel moved for a new trial based on insufficiency of the evidence for the assault II charge, but the motion was denied. (Tr. 532.)

Petitioner directly appealed his convictions raising three

claims of trial court error, including that failure to excuse biased jurors violated his Due Process and Sixth Amendment right to a fair trial before an impartial jury. The Oregon Court of Appeals affirmed without opinion on April 26, 2002, (Respt.'s Ex. 110.), and the Oregon Supreme Court denied review August 6, 2002. (Respt.'s Ex. 109.) Petitioner filed for post-conviction relief (PCR) but was denied relief. The claims raised on PCR are not at issue in this habeas action.

## DISCUSSION

In his amended petition, Petitioner raises four grounds for relief which can be characterized as follows: Ground One - violation of his Sixth and Fourteenth Amendment rights to trial before an impartial jury; Ground Two - violation of his Fourteenth Amendment right to due process when convicted of Assault II on insufficient evidence; Ground Three - violation of his Sixth and Fourteenth Amendment rights to effective assistance of counsel when a witness was not called to testify on his behalf; Ground Four - violation of his Sixth and Fourteenth Amendment rights to effective assistance of counsel when trial counsel failed to object to the verdict. Respondent contends that all but Ground One were defaulted.

In accordance with 28 U.S.C. § 2248, allegations of a return or of an answer that are not traversed "shall be accepted as true except to the extent that a judge finds from the evidence that the

are not true." Petitioner does not traverse Grounds Two, Three and Four, and, accordingly, relief as to these claims is denied. Ground One, is discussed below.

## A.    Standards and Scope of Review under § 2254

The standard of review applicable to habeas corpus petitions on behalf of a person in custody pursuant to the judgment of a state court is set out in 28 U.S.C. §2254 (d):

> An application [ ] shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 386-89 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review. "We all agree that state court judgments must be upheld unless, after the closest examination of the state court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Id.* at 389.

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393

F.3d 943,974 (9th Cir. 2004) cert. denied, 126 S. Ct. 484 (2005).

A state court decision is "contrary to" clearly established Federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. *Williams,* 529 U.S. at 388. "A state court need not even be aware of [Supreme Court] precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (citing *Early v. Packer*, 537 U.S. 3, 7-8 (2002) (internal quotation omitted)).

An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle [ ] but unreasonably applies that principle to the facts of the [ ] case." *Lambert* at 974 (citing *Williams*.) The state court's application of law must be *objectively unreasonable*. *Id.* (emphasis added). "Under §2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [the law] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [the law] to the facts of his case in an objectively unreasonable manner. An *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Woodford v. Visciotti*, 537 U.S. 19, 24,25 (2002), rehearing denied, 537 U.S. 1149 (2003), (internal

citations omitted).

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). In reviewing the state court decision, factual findings are presumed to be correct in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

When a state court does not supply the reasoning for its decision, a federal court does an independent review of the record to determine whether the state court decision was objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 982 (9th Cir. 2000). The review does not, however, change the rule of decision. *Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2001). If the federal court does not find that the state court decision was objectively unreasonable, deference is given to the state court decision and habeas relief is denied. *Delgado*, 223 F.3d at 981-82; *see also Williams*, 529 U.S. at 386-89.

Here, the Oregon Court of Appeals affirmed Petitioner's conviction without opinion and the Oregon Supreme Court denied review. I must, therefore, conduct an independent review of the trial court proceeding to determine whether the Oregon court's decision affirming Petitioner's conviction was contrary to, or an unreasonable application of clearly established federal law as

determined by the Supreme Court of the United States.

## B.  Fair and Impartial Jury

The Sixth Amendment guarantees a criminal defendant "a fair trial by a panel of impartial, indifferent jurors." *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1998) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)) (internal quotation omitted).  "Qualified jurors need not, however, be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975). "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id*. at 800 (citing *Irvin*, 366 U.S. at 723).

The presence of a biased juror is a structural error entitling the defendant to a new trial.  *Estrada v. Scribner*, 512 F.3d 1227, 1235 (9th Cir. 2008) (citing *Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998)).  Presence of a biased juror is a question of fact, and accorded deference under 28 U.S.C. § 2254.  *Id*., 512 F.3d at 1235, 1240 (citing *Dyer*, 151 F.3d at 973 n.2).  Actual bias is present when a juror has "a state of mind that leads to an inference that the person will not act with entire impartiality."

*Id.*, 512 F.3d 1227, 1240 (9th Cir. 2008), *quoting United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) (internal quotation omitted). In extraordinary cases, presumptive bias may be found based on the circumstances. *See Irvin*, 366 U.S. 717 (inflammatory pre-trial publicity with 8 of 12 jurors believing defendant was guilty before trial began); *Rideau v. Louisiana*, 373 U.S. 723 (1963) (20 minute confession broadcast on television three times before trial); *Estes v. Texas*, 381 U.S. 532 (1965) (press created circus atmosphere during trial). However, it is only when the totality of the circumstances makes the trial fundamentally unfair that bias will be presumed. *See Murphy*, 421 U.S. at 799 (exposure to information about a state defendant's prior convictions or to news accounts of the crimes charged does not alone presumptively deprive defendant of fair trial). In *Patton v.* Yount, 467 U.S. 1025, 1035 (1984), the Supreme Court stated the standard for jury impartiality as "not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant."

**C. The Merits**

In Ground One, Petitioner claims that the jury hearing his case was tainted when exposed to a prior proceeding, thus violating his Sixth Amendment right to a fair and impartial jury. Petitioner argues there is sufficient evidence to presume the jury was tainted and find structural error. In the alternative, Petitioner argues

that jury contamination from exposure to the prior proceeding and the judge's corrective instructions had a substantial and injurious effect in the jury's determination of the verdict, requiring reversal of his conviction. (Petr.'s Mem., docket #45, 1-2, 9.) After careful review of the record, I find the circumstances of this case do not warrant a presumption that the jury was tainted and structural error occurred. Moreover, because I find Petitioner's assertions of error from the jury's exposure to the prior proceeding too speculative to constitute a constitutional violation, his claim that it had a substantial and injurious effect in the jury's determination of the verdict must fail.

### 1. Presumptive Bias

As noted above, application of presumptive bias is reserved for extraordinary circumstances in which "jurors had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton*, 467 U.S. 1035. The Ninth Circuit, in *Mach*, 137 F.3d 630, found jury contamination and structural error when, during voir dire, a prospective juror in a sexual abuse case repeatedly made expert-like statements on the veracity of children asserting claims of sexual abuse. The circumstances here, however, do not warrant a finding of presumptive bias.

The prospective jurors in this case were exposed to a domestic violence proceeding unrelated to Petitioner's trial. It involved a different defendant and victim, and a guilty plea rather than a

trial.  Although the exact details of what the jury heard in the prior proceeding are not available, the trial judge summarized the proceeding as "standard -- his minimization of his conduct and her forgiving the conduct and wanting to reunite." (Respt.'s Ex. 103, Tr. 23.)   He noted that "most people that do any reading whatsoever" would be aware of the common patterns seen in domestic violence cases.  (Id.)   Stating he did not think the jury was hopelessly contaminated and that he saw no problems with the jury, he did not discharge them.  (Tr. 23-24.)

Moreover, the trial court repeatedly emphasized to the prospective jurors that Petitioner was presumed innocent, (Tr. 30-33: 4 times; Tr. 36; Tr. 41; Tr. 45; Tr. 128-129: 2 times), that the juror's personal experience or other proceedings had no bearing upon Petitioner's case, (Tr. 30-33: 2 times), and that unless the State proved beyond a reasonable doubt that he had committed the crimes charged they could not find Petitioner guilty.  (Tr. 30-33; Tr. 45.)   The trial court also questioned the jurors about their personal experience with domestic violence and the transcript shows jurors spoke up freely.  The court then dismissed for cause those jurors stating their experiences would make sitting on this jury uncomfortable or stressful, or those who expressed any degree of uncertainty about their ability to be impartial or fair.  After voir dire counsel did not renew his objection that the jury was tainted, suggesting he was satisfied that the jurors selected could

be impartial and fair. Because there is no evidence that the jurors were not able to set aside their impressions or opinions and render a verdict based on the evidence presented, a presumption of bias in not warranted.

Petitioner raises the issue that the trial judge used the Oklahoma City bombing/Timothy McVeigh in giving an example of the presumption of innocence and contends it was a highly prejudicial comment that tainted the jury. Outside the context of the full record, the court's comment raises questions for its potential impact on a jury. However, in the context of the full record, the comment does not raise the same concerns.

The comment in question was made immediately after the court specified that the only evidence available to the jury at the start of a trial is the defendant's presumption of innocence. It was then immediately followed by the court stating "the mere fact that a person comes in [to court] does not mean they have done anything. They're presumed to be innocent." (Tr. 33.) As noted previously, the court repeatedly stressed the presumption of innocence during voir dire - approximately nine times in all. The court also stressed the State's high burden of proof approximately five times. (Tr. 30-33; Tr. 44-45.) The court's comment must be considered in this context. Moreover, the comment did not prompt an objection by counsel, suggesting the tone and the context in which it was spoken was important to how it was perceived. In the context of the full

record, I do not find the court's comment to be as Petitioner characterizes it or that it caused the jury to be unable to be impartial and fair.

Structural error is rare and found when an error "necessarily renders a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Washington v. Recuenco*, 126 S.Ct. 2546, 2551 (2006). Here, the trial judge did not find the jury to be contaminated - a finding that on habeas review is given deference absent clear and convincing evidence to the contrary - and the record does not support a finding of presumptive bias. Accordingly, it was neither contrary to nor an unreasonable application of established federal law for the Oregon Court of Appeals to reject Petitioner's claim of error from a tainted jury and affirm his conviction.

### 2. Substantial and Injurious Effect

Petitioner argues in the alternative that exposure to the prior proceeding was error that had a substantial and injurious effect in determining the jury's verdict. Petitioner claims "the jury had to reject Ms. Roady's testimony to convict [Petitioner]" and that exposure to the prior proceeding and the judge's instructions caused it to do so. (Petr.'s Reply, 9.)

On habeas review of error, this court applies the *Brecht v. Abrahamson*, 507 U.S. 619 (1993) harmless error analysis, *Fry v. Pliler*, _U.S._, 127 S.Ct. 2321, 2326-2327 (2007), *reh'g denied* 128

S.Ct. 19 (2007), and conducts an independent determination of whether the trial error had a substantial or injurious effect. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995); *Mancuso v. Olivarez*, 292 F.3d 939, 949-50 FN 4 (9th Cir. 2002). A prerequisite to the court's determination, however, is the presence of a constitutional violation. *Dillard v. Roe*, 244 F.3d 758, 766-67 (9th Cir. 2001). I find Petitioner's argument too speculative to amount to a constitutional violation.

There is no evidence in the record that exposure to the prior proceeding or the judge's instructions caused the jurors to be biased against Petitioner, or caused them to reach the verdict of guilty as Petitioner alleges. The prior proceeding was not related to Petitioner's trial in any way, and what the jury heard was "a domestic violence plea and sentence, a standard -- his minimization of his conduct and her forgiving the conduct and wanting to reunite. . . . [A] pattern of this domestic abuse that is totally typical." (Tr. 23.) Domestic violence is prevalent in the media and daily life, and Petitioner's argument that exposure to the prior hearing tainted the jury and caused it to reject Ms. Roady's testimony is speculative. The jury heard Ms. Roady testify and they also heard testimony and evidence contradicting her testimony. In reaching a verdict, the jury was required to make a credibility determination to either accept or reject Ms. Roady's testimony. The contradictory evidence presented at trial, including the tape

of her 911 call, photographs of her injuries and the testimony of police and victims advocates, was sufficient for the jury to find Ms. Roady's testimony not credible. There is no evidence exposure to the prior proceeding had an impact in their determination.

Petitioner's argument that the court's instructions caused the jury to reject Ms. Roady's testimony and return a guilty verdict is also speculative. Petitioner's characterizations of the trial court's comments take them out of the context of the full record. As discussed previously, when read in context, the comments are not as Petitioner portrays them and I do not find them to constitute a constitutional violation. In the absence of a finding of error, this court need not undertake a harmless error analysis and deference is given to the Oregon court decision. 28 U.S.C. § 2254(d)(1).

## CONCLUSION

Based on the above, I do not find the Oregon court's decision affirming Petitioner's conviction to be contrary to or an unreasonable application of established federal law. Accordingly, Petitioner's Amended Petition for Writ of Habeas Corpus (#18) is DENIED.

IT IS SO ORDERED.

DATED this _____3rd_____ day of April, 2008.

_/s/ Garr M. King_____
Garr M. King
United States District Judge